J-A24029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
v.   :
:
:
STEFFONE SPANN   :
:
Appellant   :   No. 844 EDA 2021

Appeal from the Judgment of Sentence Entered December 18, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011532-2013

BEFORE:   LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:        **FILED DECEMBER 16, 2021**

Appellant, Steffone Spann, appeals from the December 18, 2014

Judgment of Sentence entered in the Philadelphia County Court of Common

Pleas following his conviction after a bench trial of Attempted Murder,

Aggravated Assault, Simple Assault, Recklessly Endangering Another Person,

and various firearms offenses.[1] He challenges the admission of alleged

hearsay testimony. After careful review, we affirm.

We glean the following factual and procedural history from the certified

record. In the early morning hours of July 28, 2013, Rodney Wroten was

sitting in his van on the 5700 block of Baltimore Avenue in Philadelphia.

Appellant, whom Wroten did not know, approached and asked him "where the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2502(a), 2702(a), 2701(a), 2705, 6106(a)(1),
2707.1(a), 6108, and 907(a), respectively.

shit at?" N.T. Trial, 9/18/14, at 15. While Wroten did not recognize Appellant, he had heard from other people that someone named "Steffone," who lived on Cecil Street, suspected him of stealing and was "looking for" him. *Id.* at 16-18. After a brief argument, Appellant began to walk away but turned and fired three shots through the windshield, striking Wroten in his arm, shoulder, and back. Appellant fled the scene. A bystander called 911, and police officers transported Wroten to the hospital.

At the hospital, Officer Bernadette Sorrell of the Philadelphia Police Department interviewed Wroten. Wroten told Officer Sorrell that his shooter "lived on Cecil Street and his first name was Steffone." N.T. 110. Officer Sorrell, in turn, passed this information onto Detective Darryl Pearson. Based on his communication with Officer Sorrell, Detective Pearson included Appellant's photo in a photo array. Wroten identified Appellant as his attacker from the array.

The Commonwealth charged Appellant with the above crimes. On September 18, 2014, Appellant waived his right to a jury trial, and a bench trial commenced. The trial court heard testimony from Wroten, Officer Sorrell, and Detective Pearson.

While on the witness stand, Wroten positively identified Appellant as the man who attacked him and further testified that he did not know Appellant at the time of the attack or have any prior history with him. *Id.* at 14, 17-18.

Wroten then began to explain why he initially suspected that Appellant was his attacker, by describing what "somebody had told" him, at which point

- 2 -

Appellant lodged a hearsay objection. *Id.* at 15. The Commonwealth argued that it was "not offering this statement for the truth[,]" but to "see why it is that [Wroten] told the police who it is he thought this person was." *Id.* at 15-16. The court summarily overruled the objection and Wroten proceeded to testify that he had heard from other people that someone named "Steffone," who lived on Cecil Street, suspected him of stealing and was "looking for" him. *Id.* at 16-17. Wroten further testified that he did not initially recognize the man who attacked him, but he "put together who this must be." *Id.* at 17-18. Finally, Wroten testified that he identified Appellant in Detective Pearson's photo array. *Id.* at 29-30. The court admitted the photo array into evidence with no objection. *Id.* at 29.

Officer Sorrell testified that Wroten told her "that [his attacker] lived on Cecil Street and his first name was Steffone." *Id.* at 110. Detective Pearson testified that he was "made awa[re] of a potential suspect" during his conversation with Officer Sorrell. *Id.* at 126. When the Commonwealth asked how he came to develop Appellant as a suspect, Appellant objected, saying "it's going to be hearsay[.]" *Id.* at 127. The trial court overruled the objection and, in response, Detective Pearson stated that he "received information from Officer Sorrell of the first name of [Appellant and his] street address[.]" *Id.* at 127. Detective Pearson did not further describe the context in which he received the information.

At the conclusion of the one-day trial, the court found Appellant guilty of the above offenses. Appellant appealed from the Judgment of Sentence and

filed a Pa.R.A.P. 1925(b) Statement to which the trial court responded. On July 25, 2016, this Court affirmed after finding that Appellant waived all arguments by filing an impermissibly vague Pa.R.A.P. 1925(b) statement. ***Commonwealth v. Spann***, 154 A.3d 868 (Pa. Super. filed July 25, 2016) (non-precedential decision).

Following post-conviction relief proceedings, the court reinstated Appellant's direct appeal rights *nunc pro tunc*, and this timely appeal followed. Both Appellant and the trial court complied with Rule 1925.

Appellant presents the following issues on appeal:

1. Did the trial court err and cause irreparable harm to Appellant by allowing [Wroten] to testify regarding inadmissible hearsay that related to Appellant's identification, Appellant's alleged motive, Appellant's address, and so on?

2. Did the trial court err and cause irreparable harm to Appellant by allowing Detective Darryl Pearson to testify regarding inadmissible hearsay that related to Appellant's identification?

Appellant's Br. at 4.

Both issues challenge the admission of certain testimony. The admissibility of evidence lies within the sound discretion of the trial court, which balances the probative value of each piece of evidence against the dangers of unfair prejudice. ***Commonwealth v. Estepp***, 17 A.3d 939, 945 (Pa. Super. 2011). This Court reviews challenged evidentiary rulings for an abuse of discretion. ***Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009). To be reversible under this standard, "an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party."

*Commonwealth v. Lively*, 231 A.3d 1003, 1008 (Pa. Super. 2020) (citation omitted).

**The Admissibility of Wroten's Testimony**

Appellant avers that Wroten's testimony—that others told Wroten that someone named "Steffone" was "looking for him" because Steffone thought that Wroten had stolen from him—was inadmissible hearsay. Appellant's Br. at 8. We disagree.

Hearsay is an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule. *Commonwealth v. Manivannan*, 186 A.3d 472, 480 (Pa. Super. 2018); Pa.R.E. 801(c). However, it is well established that when a party introduces an out-of-court statement not for its truth but to explain the witness's course of conduct, the statement is **not** hearsay. *Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007); *Commonwealth v. Johnson*, 42 A.3d 1017, 1035 (Pa. 2012).

We are nonetheless cognizant that, even when they are ostensibly not offered for their truth, statements that "contain[] specific assertions of criminal conduct by the named accused" may warrant exclusion if they are "likely understood by the jury as providing proof as to necessary elements of the crime[.]" *Commonwealth v. Palsa*, 555 A.2d 808, 811 (Pa. 1989). When, however, the evidence is presented at a bench trial, we presume that the trial court "know[s] the law, ignore[s] prejudicial statements, and disregard[s] inadmissible evidence," and so will only consider evidence for its

proper purpose. **Commonwealth v. McFadden**, 156 A.3d 299, 309 (Pa. Super. 2017) (citation omitted).

In its Rule 1925(a) Opinion, the trial court cogently explained that Wroten's testimony was not hearsay because the Commonwealth was not attempting to prove that Appellant had been looking for Wroten, that Appellant thought that Wroten stole from Appellant, or that Appellant lived at a particular address. Rather, the court explained that it admitted the testimony to establish the course of the investigation, *i.e.* that the police investigated Appellant as the shooter because Wroten told Officer Sorrell that someone named Steffone who lived on Cecil Street thought that Wroten stole from him and Steffone was looking for him. The court opined:

> The statements were not offered for the truth of the matter asserted within the statements (*i.e.*, to prove that Appellant had been looking for Wroten, that Appellant lived on Cecil Street, or that Appellant had accused Wroten of stealing from him). Rather the statements were solely admitted to establish the officers' course of conduct. Pennsylvania law expressly sanctions the admission of extrajudicial statements for such a narrow purpose. **See Rega**, 933 A.2d at 1017. Thus, the statements are neither hearsay nor inadmissible on hearsay grounds, and the trial court did not err in admitting them. **See Commonwealth v. Levanduski**, 907 A.2d 3, 18 (Pa. Super. 2006) [ ] ("When an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and [it] is not excludable under the hearsay rule") [citation omitted]).

Tr. Ct. Op., 5/10/21, at 5-6 (some internal citations omitted; brackets omitted). We agree that the Commonwealth offered Wroten's statements solely to explain the officers' course of conduct. As such, the statements were not hearsay, and the trial court did not err in admitting them.

Appellant argues that, "because the hearsay [included] Appellant's name and address and gave a motive for Appellant to shoot" Wroten, it was "effectively . . . impossible for the trial court to compartmentalize[.]" Appellant's Br. at 14. As a result, he argues, "[t]he harmful effect and extent of this hearsay evidence overcomes the presumption that a judge in a bench trial can overlook inadmissible evidence[.]" *Id.* at 14-15.  We disagree.

Initially, because the statements were not hearsay, the court was under no obligation to ignore them entirely. Moreover, there is no indication that the trial court, as fact-finder, improperly considered the statements for their truth. In fact, in its 1925(a) Opinion, the court specifically noted that it did **not** consider the disputed statements "as substantive evidence of Appellant's guilt[,]" and that "it based its verdict entirely upon [Wroten's] testimony positively identifying Appellant as the person who shot him." Tr. Ct. Op., 5/10/21, at 6 (quoting Tr. Ct. Op. 7/14/15 at 7, 8). As such, the court opined, "Appellant cannot show that admitting the contested statements prejudiced him." *Id.* at 6.

In light of these specific disclaimers by the trial court, we have no reason to conclude that the court improperly considered the statements as proof of any elements of the underlying crime. Appellant has failed to rebut the presumption that the trial court, sitting as fact-finder, only considered the evidence for its proper purpose. We, thus, agree with the trial court that Appellant has failed to demonstrate that its decision to admit the statements prejudiced him.  Accordingly, Appellant's first issue garners no relief.

**The Admissibility of Detective Pearson's Testimony**

Appellant also challenges the admission of Detective Pearson's testimony. As stated above, Detective Pearson testified that he "received information from Officer Sorrell of the first name of [Appellant] and street address – or rather the street that he lived on," and that based on this information, he developed Appellant as a suspect and decided to include his photo in the array that he showed to Wroten. N.T. Trial, at 127.

Appellant argues that the trial court erred "by allowing hearsay evidence relating to the identification of Appellant to Detective Pearson by unnamed persons other than Complainant." Appellant's Br. at 15.  We disagree that this evidence constituted hearsay.

As stated above, it is well established that when a party introduces an out-of-court statement not for its truth but to explain the witness's course of conduct, the statement is **not** hearsay. *Rega*, 933 A.2d at 1017. As our Supreme Court has explained,

> if the [out-of court] statement is intended to be used for some purpose other than establishing its truth—*i.e.*, to show the effect that the statement had on the listener (say, for instance, the utterance caused the police officer to create a photo array using only people with green eyes)—then it would not be hearsay and, consequently, would be admissible for that non-truth purpose, subject to any other applicable evidentiary rules.

*Commonwealth v. Fitzpatrick*, 255 A.3d 452, 458 (Pa. 2021).

Like the non-hearsay example highlighted in *Fitzpatrick*, *supra*, Detective Pearson described what he learned from Officer Sorrell solely to explain why he developed Appellant as a suspect and included him in the photo

array. The Commonwealth did not offer this portion of Detective Pearson's testimony to prove that Appellant was, in fact, the shooter; rather, it offered the statement to explain the course of the investigation. Accordingly, Detective Pearson's testimony was not hearsay, and, thus, the trial court properly exercised its discretion in admitting the testimony.[2] Accordingly, Appellant's second issue fails.

As neither Wroten nor Officer Pearson's statements constitute hearsay, the trial court properly exercised its discretion in admitting the challenged testimony. We, thus, discern no abuse of discretion.

Judgment of Sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>12/16/2021</u>

---

[2] In her Rule 1925(a) Opinion, Judge Lane opined that the challenged portion of Detective Pearson's testimony was admissible hearsay pursuant to the hearsay exception for prior statements of identification by declarant witnesses. Trial Ct. Op., at 7 (citing Pa.R.E. 803.1(2)). We conclude that Detective Pearson's statement was admissible as course of investigation evidence. Thus, we affirm on other grounds. ***See Commonwealth v. Miller***, 787 A.2d 1036, 1038 (Pa. Super. 2001) (reiterating the general rule that "if a trial court's decision is correct, we may affirm on any ground.").