J-S44043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                              :  PENNSYLVANIA
                                              :
                  v.                        :
                                              :
                                              :
CHAD DAVID FRANKENFIELD         :
                                              :
             Appellant         :  No. 946 EDA 2024

Appeal from the Judgment of Sentence Entered April 24, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0001439-2021

BEFORE:   NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MARCH 31, 2025**

Chad David Frankenfield ("Frankenfield") appeals from the judgment of sentence imposed following his bifurcated jury trial convictions of, *inter alia*, persons not to possess firearms.[1]  We affirm.

The trial court summarized the relevant evidence presented at trial:

[O]n October 9, 2020, early in the morning, Joshua Case [("the Victim") arrived] at work[.  As he parked his car,] he was accosted by an "individual standing at [his] driver's door holding a pistol at [his] face."  The individual demanded that he get out of his vehicle or [he would] shoot him.

     [The Victim] got out of his vehicle . . ..   The individual demanded his wallet, but [the Victim] did not have [it].  A struggle . . . ensued, and the bandana the individual was wearing to hide his identity slipped off his face.  At trial, [the Victim] identified [Frankenfield] as the person who confronted him.

---

[1] 18 Pa.C.S.A. § 6105(a) (providing that a person who has been convicted of an enumerated offense shall not possess or use a firearm in this Commonwealth).

Trial Court Opinion, 6/18/24, at 3-4 (footnotes omitted and paragraph break added).  Frankenfield fired two shots at the Victim, missing him.  The Victim retrieved his own gun from his car, and Frankenfield fired additional shots in the Victim's direction, again missing him.  Frankenfield then ran away, and the Victim called the police.

Approximately two and half hours later, while the detectives were still on the scene, the Victim observed Frankenfield walking with a bicycle.  The police took Frankenfield into custody.  At the time of his arrest, the police discovered marijuana, fentanyl, and methamphetamine on his person.

The Commonwealth charged Frankenfield with attempted homicide; aggravated assault; robbery; theft from a motor vehicle; possession of a small amount of marijuana; and two counts of possession of a controlled substance (collectively, "the remaining charges").  The Commonwealth also charged him with persons not to possess firearms.  Frankenfield requested severance of this latter charge, and the trial court granted it.

Accordingly, the remaining charges, above, proceeded first to a jury trial ("first jury trial").  The Victim testified to the above events, and the Commonwealth played a surveillance video, which depicted the underlying incident.  On April 14, 2022, the jury found Frankenfield guilty of the three drug possession counts, but not guilty of the other charges.  On May 31, 2022, the trial court imposed two sentences, of five months and twenty-nine days to eleven months and twenty-nine days' imprisonment, to run consecutively.

In August 2022 and February 2023, Frankenfield filed "motions *in limine*" arguing, respectively, that collateral estopped and double jeopardy barred prosecution of the remaining persons not to possess firearms charge.[2] In support of both theories, Frankenfield argued that: (1) the jury's acquittals in the first trial, of attempted homicide, robbery, and the related offenses, could "only mean that it concluded [he] was not the person depicted in the surveillance video shooting at" the Victim; and thus (2) the Commonwealth could not present the same video and the eyewitness identification at a second trial to argue he was "the person seen on the video firing a handgun at the [V]ictim." Motion *in Limine*, 8/21/22, at 3; **see also** Omnibus Motion *in Limine*, 2/27/23, at 3. The trial court denied both motions.

The persons not to possess firearms charge proceeded to another jury trial ("second jury trial"). The Victim testified, again, consistent with the

_____

[2] In the interim, on August 23, 2022, the persons not to possess firearms charge proceeded to a first jury trial. However, the trial court granted a mistrial, after a Commonwealth witness, a police sergeant, testified that he observed Frankenfield "riding a bike . . . that later turned out to be stolen." N.T., 8/23/22, at 107-08.

Following this mistrial, Frankenfield also argued double jeopardy applied to bar re-prosecution, because the Commonwealth intentionally provoked him into moving for a mistrial. **See Commonwealth v. Adams**, 177 A.3d 359, 371 (Pa. Super. 2017) (stating that double jeopardy bars retrial "when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial" and when the prosecutor's conduct "is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial"). The trial court denied relief on this theory. Frankenfield does not pursue this issue on appeal.

above summary of the facts. Frankenfield presented the surveillance video. Frankenfield did not testify on his own behalf. On March 1, 2023, the jury found Frankenfield guilty of persons not to possess firearms. On April 24, 2023, the trial court imposed a sentence of eight to twenty years' imprisonment.[3]

Frankenfield filed a timely post-sentence motion, arguing, *inter alia*, the trial court erred in not dismissing his pre-trial motion to dismiss the persons not to possess firearms charge on double jeopardy grounds. After hearing argument from the parties, the trial court denied the motion.

Frankenfield filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[4]

Frankenfield presents one issue for our review:

Whether the trial court erred in denying [Frankenfield's] motion to dismiss the charge of persons not to possess firearms based upon double jeopardy and collateral estoppel in that a prior jury had considered the issue of whether [Frankenfield] possessed a firearm and made a factual determination that he had not?

Frankenfield's Brief at 4.

---

[3] By this time, Frankenfield had completed the sentences imposed on his drug convictions from the first trial.

[4] Frankenfield did not initially file a notice of appeal. Subsequently, however, following the trial court's appointment of counsel, he filed a Post Conviction Relief Act petition, **see** 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his direct appeal rights *nunc pro tunc*. The trial court granted this petition, and counsel filed a notice of appeal on March 26, 2024.

Frankenfield avers the trial court erred in denying his motions to dismiss the persons not to possess firearms charge. He contends that collateral estoppel and double jeopardy barred prosecution, where there was a prior verdict determining an essential fact in the case — his identity as the assailant.

We consider the applicable standard of review and relevant principles:

"Application of the doctrine of collateral estoppel is a question of law. Accordingly, our standard of review is *de novo*, and our scope of review is plenary."

The Double Jeopardy Clauses of both the U.S. and Pennsylvania constitutions are "grounded on the concept that no person should be harassed by successive prosecutions for a single wrongful act and that no one should be punished more than once for the same offense." . . .

Collateral estoppel is another aspect of the rule against Double Jeopardy. As this Court explained:

. . . The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. . . .

Collateral estoppel "does not operate in the criminal context in the same manner in which it operates in the civil context." In determining whether collateral estoppel applies in the criminal arena, we undertake the following inquiries[, arising from *Ashe v. Swenson*, 397 U.S. 436 (1970)]:

1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and

- 5 -

> 3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

> Our High Court further elucidated: "If the [prior] verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way." "Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes." . . .

*Commonwealth v. Banks*, 253 A.3d 768, 777-78 (Pa. Super. 2021)

(citations omitted).

> However, the Pennsylvania Supreme Court has explained:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. *See* . . . *Blockburger v. United States*, 284 U.S. 299 . . . (1932) . . . . The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution. . . .

*Commonwealth v. Caufman*, 662 A.2d 1050, 1052 (Pa. 1995).

Finally, we consider: "It is well-settled that consistency in a [jury] verdict is not required and that inconsistencies are generally not reviewable because they would involve speculation or require investigation into the jury's deliberations." *Commonwealth v. Muhammad*, 289 A.3d 1078, 1091 (Pa. Super. 2023) (citation omitted).

- 6 -

> ***[I]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal.*** Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies ***as long as there is evidence to support the verdict***. . . .

***Id***. at 1092 (citation omitted and emphases in original).

On appeal, Frankenfield contends the trial court erred in denying his motion to dismiss his persons not to possess firearms charge on collateral estoppel and double jeopardy grounds. As stated above, he contends the jury at his first trial had already determined "an essential fact in the case." Frankenfield's Brief at 9. Frankenfield maintains the issues before the jury at the first trial "[c]learly . . . included the allegation that [he] confronted [the Victim] with a gun and . . . fired at him." ***Id***. at 13. He asserts that: (1) at both the first and second trials the Commonwealth "offered near identical testimony" from the Victim identifying him as the assailant, as well as evidence his clothing had gunshot residue; and (2) at the first trial, "there was no testimony from any individual," other than the Victim, that Frankenfield possessed a gun. ***Id***. at 12-13. Frankenfield then reiterates that the first jury acquitted him of all charges, except for the possession of drugs found on his person at the time of his arrest.

Frankenfield then asserts:

In reviewing the first and third trials, there can be no doubt that the issues presented and the evidence offered by the Commonwealth to prove its charges was identical. The decision of the jury in the first trial that [Frankenfield] was not guilty of attempted homicide, aggravated assault, robbery and theft *meant that the precise evidentiary issue of whether he possessed a gun was resolved in his favor by the verdict of acquittal*.

*The only possible rational explanation of the verdicts in light . . . of the evidence is that the jury found that [Frankenfield] was not the person that attacked [the Victim]*. In the first trial, the jury necessarily rejected [the Victim's] testimony that [Frankenfield] was the individual who attacked him with a gun. This factual determination should have collaterally estopped the Commonwealth from presenting identical evidence [at the second trial].

*Id*. at 16 (emphases added).

Here, the trial court denied relief on Frankenfield's claim, on the ground that his agreement to severance of the charges acted as a waiver of any double jeopardy claim, should he be acquitted at the first trial. *See* Trial Court Opinion, 6/18/24, at 6 (*citing* *Banks*, 253 A.3d at 783 (stating "it would appear that it is now the law under both the U.S. and Pennsylvania constitutions that a criminal defendant's voluntary severance of charges results in a blanket inability to successfully invoke double jeopardy to bar the subsequent trial if he is acquitted in the first, regardless of the results of the *Ashe* test").

After careful review of the record, we affirm the trial court's denial of relief on Frankenfield's double jeopardy and collateral estoppel claims, albeit

on different grounds.[5]  ***See Banks***, 253 A.3d at 777.  We reject Frankenfield's premise that "[t]he only possible rational explanation of the verdicts [at the first trial] is that the jury found [he] was not the person [who] attacked" the Victim.  Frankenfield's Brief at 16.  There was no such query to, nor polling of, the jury, and the jury did not announce any such finding.  Instead, the jury's verdict slip merely stated "not guilty" for the charges of attempted homicide, aggravated assault, robbery, and theft from a motor vehicle, and "guilty" for the three drug possession counts.  The only conclusion we may infer from the "not guilty" verdicts was that the jury found the Commonwealth failed to establish, beyond a reasonable doubt, all of the distinct elements of each charge.  ***See Commonwealth v. Safka***, 141 A.3d 1239, 1255 (Pa. 2016) (stating the Commonwealth bears the burden of proving, beyond a reasonable doubt, every material element of the crime charged, and "if the Commonwealth fails to carry this burden beyond a reasonable doubt as to any one element, the accused must be acquitted").  The jury's particular reasons for reaching its ultimate verdict on any of the offenses are simply not known, and we may not speculate as to what they were.

On this basis, we may distinguish ***Commonwealth v. States***, 938 A.2d 1016 (Pa. 2007), on which Frankenfield relies.  In that matter, the defendant and two men "were in an automobile that was in a single vehicle accident."

_____

[5] "We may affirm the trial court's determination on any grounds." ***Commonwealth v. McFalls***, 251 A.3d 1286, 1292 n.6 (Pa. Super. 2021).

*Id*. at 1018. The defendant survived the crash, but the two other men died. *See id*. The Commonwealth charged the defendant with involuntary manslaughter, driving under the influence, and related offenses, as well as accidents involving death while not properly licensed. *See id*. The defendant sought severance of the latter charge, arguing "potential jury prejudice based on the fact that he did not hold a valid driver's license. The trial court agreed and granted severance." *Id*.

The trial court then conducted "a simultaneous jury/bench trial, with the court determining guilt on the accidents involving death [while not properly licensed] charge, and the jury reaching a verdict on all other charges." *Id*. at 1018-19 (unnecessary capitalization omitted).

> [T]he jury informed the trial court that it was hopelessly deadlocked on all charges before it. The trial court declared a mistrial[, while it] rendered its verdict on the accidents involving death charge. ***The court explicitly stated that it was not convinced beyond a reasonable doubt that [the defendant] was the driver of the vehicle***; as a result, it acquitted [him] of the single charge before it.

*Id*. at 1019 (unnecessary capitalization omitted and emphasis added).

The defendant then filed a motion to dismiss the remaining charges on double jeopardy principles. *See id*. He alleged the trial court's finding, that the Commonwealth failed to prove that he was the driver, precluded further prosecution of the remaining charges, because it would require a jury to find he was the driver. *See id*. The trial court denied the motion.

In the instant appeal, Frankenfield correctly summarizes that in **States**, our Supreme Court determined that the Commonwealth could not retry the defendant on the remaining charges, "for to do so would permit relitigation of an issue already determined, by final judgment, in [his] favor." **Id**. at 1027; **see also** Frankenfield's Brief at 10. However, Frankenfield omits the salient fact that the **States** trial court, sitting as finder of fact on the severed accidents involving death while not properly licensed charge, announced an explicit finding that the Commonwealth did not sufficiently prove the defendant was the driver. **See** Frankenfield's Brief at 10. Contrary to Frankenfield's claim, no such explicit jury finding, as to the identity of the assailant, is present in this matter.

Additionally, we are mindful of the **Blockburger** test — that when reviewing a double jeopardy and collateral estoppel claim, we review the offenses charged to determine whether one contains an element the other does not. **See Caufman**, 662 A.2d at 1052. We disagree with Frankenfield's claim that the first jury's acquittals "meant that the precise evidentiary issue of whether he possessed a gun was resolved in his favor." Frankenfield's Brief at 16. The Pennsylvania Crimes Code defines the offense of persons not to possess firearms as follows: "A person who has been convicted of an offense enumerated . . . shall not possess[ or] use a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a). However, none of the remaining charges — attempted homicide, aggravated assault, robbery, and theft from a motor

vehicle — include the element of possessing a firearm. ***See*** 18 Pa.C.S.A. §§ 901(a) (stating "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime"), 2501(a) (stating "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being"), 2702(a)(1) (stating a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life"), 3701(a)(1)(ii) (stating that "[a] person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury"), 3934(a) (stating that a person commits "theft from a motor vehicle if he unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any movable property of another from a motor vehicle with the intent to deprive him thereof"). Accordingly, the jury's acquittals on the remaining charges did not bar, on double jeopardy grounds, prosecution of the persons not to possess firearms charge. ***See Caufman***, 662 A.2d at 1052.

Finally, to the extent Frankenfield avers that the first jury's acquittals on the remaining charges were inconsistent with the second jury's guilty verdict on the firearms charge, we reiterate that "consistency in a [jury] verdict is not required and that inconsistencies are generally not reviewable

because they would involve speculation or require investigation into the jury's deliberations." ***Muhammad***, 289 A.3d at 1091. As discussed above, the jury announced no finding as to Frankenfield's identity as the assailant, and we may not speculate that it did. ***See id***.

In any event, we would disagree with any claim that the verdicts were inconsistent. As stated above, the elements of persons not to possess firearms are distinct from the elements of all the remaining charges. Had all the charges proceeded to a single trial together, the jury was free to find that Frankenfield possessed a firearm, while also finding the evidence did not establish, beyond a reasonable doubt, all of the disparate elements of the remaining charges. ***See*** 18 Pa.C.S.A. §§ 901(a), 2501(a), 2702(a)(1), 3701(a)(1)(ii), 3934(a); ***see also Commonwealth v. Maldonado***, 217 A.3d 394 (Pa. Super. 2019) (unpublished memorandum at 2, 6) (affirming order denying motion to dismiss on double jeopardy and collateral estoppel grounds, and holding the jury's acquittals of attempted homicide, aggravated assault, simple assault, recklessly endangering another person, and possession of an instrument of crime ("PIC") did not preclude prosecution on the severed, remaining charge of persons not to possess a firearm, because the jury's

acquittals on PIC "did not reflect a definitive finding that [the defendant] did not possess a weapon").[6]

For all the foregoing reasons, we determine no relief is due on Frankenfield's double jeopardy and collateral estoppel arguments. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/31/2025

_____

[6] **See** Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019 may be cited for its persuasive value).