J-S41036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                  :
:
:
RASHAAN BATES                 :
:
Appellant       :   No. 202 EDA 2025

Appeal from the Judgment of Sentence Entered July 31, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009152-2021

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 27, 2026**

Appellant, Rashaan Bates, appeals from the judgment of sentence imposed following his convictions at a bench trial of rape of a child, involuntary deviate sexual intercourse (IDSI) of a person less than sixteen years of age, statutory sexual assault, sexual assault, corrupting the morals of a minor, indecent exposure, harassment, recklessly endangering another person, indecent assault of a person less than thirteen years of age, and endangering the welfare of a child.[1] On appeal, Appellant challenges the trial court's discretion in admitting a video of the victim's forensic interview at the Philadelphia Children's Alliance (PCA) and the court's discretion in imposing sentence. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 3123(a)(7), 3121.1(b), 3124.1, 6301(a)(1)(ii), 3127(a), 2709(a)(4), 2705, 3126(a)(7), and 4304(a)(1), respectively.

The trial court summarized the testimony accurately, as follows:

In March 2019, … G.P.'s maternal aunt began a dating relationship with [Appellant]. Maternal aunt resided on Robinson Street in Philadelphia with G.P. and G.P.'s brother. G.P. was about 10 or 11 years old when maternal aunt first began dating Appellant. It was around this time that [Appellant] began touching G.P. sexually at her maternal aunt's home on Robinson Street. [N.T. Trial, 10/11/23, 14-17, 83].

[Appellant's] first physical contact with G.P. occurred when he entered her bedroom at the Robinson Street residence while G.P. was asleep. G.P. awoke to find [him] standing at her bedroom door. [Appellant] was talking to G.P. and then walked over to her […] and kissed her on her lips. G.P. told [Appellant] that he should not have done that and to leave. [Appellant] left her bedroom. G.P. recalled that this happened more than once. ***Id.*** at 14-17.

On another occasion at the Robinson Street residence, [Appellant] came from upstairs and approached G.P. as she was alone on the couch in the living room watching TV. [He] sat on an adjacent couch and asked G.P. to sit next to him. G.P. sat next to [Appellant] and he moved closer to her. The two started to play fight or wrestle. At that point, [Appellant] had his hand on G.P.'s waist and kissed her on her lips. ***Id.*** at 17-18.

[Appellant's] sexual contact with G.P. progressed to sexual assaults including oral and vaginal sex more than once, and anal sex one time when the family moved to the Guyer Street residence. These incidents would usually happen at night. [Appellant] would enter G.P.'s bedroom and pull down her pants and wake her up by inserting his penis into her mouth. When G.P. was around 12 or 13 years old, [Appellant] approached her in the upstairs hallway at the Guyer Street residence and asked G.P. if she was a virgin. [Appellant] then kissed G.P. and touched her breasts. [Appellant] pulled down G.P.'s pants and underwear and inserted his penis inside her vagina. ***Id.*** at 15, 20-25, 51.

On several other occasions at the Guyer Street residence [Appellant] sexually assaulted G.P. when she was between the ages of 12 to 14 years old. [He] touched G.P. more than once with his mouth and penis outside and inside of G.P.'s vagina, as well as with his penis inside of G.P.'s mouth, and one time with his penis inside of her anus. The last incident before G.P. told anyone

about [Appellant's] sexual assault was just before her middle school graduation. While maternal aunt was out buying shoes for G.P., [Appellant] entered G.P.'s bedroom and began to kiss her. [Appellant] sexually assaulted G.P. by inserting his penis into her mouth and her vagina. *Id.* at 28-32.

Opinion, 4/3/25 ("Trial Court Opinion"), 2-3 (internal footnotes omitted).

Appellant was charged with the above-referenced ten offenses. He retained counsel, who subsequently withdrew, and new counsel was appointed. *See* N.T. Status Hearing, 1/9/23, 3-4; N.T. Trial Readiness Conference, 10/6/23, 5. Appellant ultimately proceeded *pro se* at trial, with appointed counsel remaining as stand-by counsel, and waived his right to a jury. *See* N.T. Trial Readiness Conference, 10/6/23, 5-11; N.T. Trial, 10/10/23, 5-8. On September 26, 2023, the Commonwealth filed a motion in *limine* seeking admission of hearsay statements made by G.P. detailing Appellant's misconduct with her, including the PCA video, pursuant to the Tender Years Hearsay Act (Tender Years Act). *See* 42 Pa.C.S. §§ 5981-5988; Commonwealth's Motion in *Limine*, 9/26/23. Appellant ultimately conceded the Commonwealth's motion in *limine* under the Tender Years Act. *See* N.T. Trial, 10/10/23, 4.

Trial commenced on October 10, 2023, with Appellant's opening statement in which he called the victim's allegations "false" and argued that the court "will know this because all of the different versions and stories that don't make sense" in "the videos and the statements … and the testimony." N.T. Trial, 10/10/23, 9-10. The first evidence introduced at trial was by stipulation of Appellant's date of birth of February 27, 1989. *Id.*, 11. The

following day, the Commonwealth presented the testimony of G.P., G.P.'s mother and G.P.'s aunt. G.P.'s mother and aunt testified to G.P.'s revealing of Appellant's misconduct, as the trial court relates:

> Around August 2021, G.P. disclosed the history [of] sexual assaults by [Appellant] following a conversation with her mother […]. G.P. told her mother the details of what [Appellant] had done to her several times over the past two and half years. Mother had suspicions that G.P. may be the victim of sexual abuse based on her emotional state and based on a call from her cousin describing a message from a family friend. The family friend said she received a message from God that G.P. was being sexually assaulted for the past two years. A few days after G.P.'s 14th birthday, mother initiated a conversation with G.P. and asked whether someone had touched her inappropriately. When mother mentioned [Appellant's] name, G.P. nodded her head yes. G.P. did not previously disclose the sexual assaults until her mother asked because she was afraid and unsure of what could happen. [N.T. Trial, 10/11/23, 34-36, 57-62].
>
> After G.P. disclosed the sexual assaults by [Appellant], her mother called [her sister, G.P.'s] maternal aunt to tell her about G.P.'s disclosures. Maternal aunt went to mother's house and spoke with G.P. G.P. told maternal aunt that [Appellant] sexually assaulted her many times at maternal aunt's residence. Upon learning of the sexual assaults, maternal aunt, mother, and G.P. provided statements to detectives of the Special Victims Unit ("SVU") of Philadelphia. [I]n August of 2021, after making a report with SVU, G.P. sat for a video recorded interview with [PCA]. *Id.* at 36, 62, 89; (Exhibit C-6 at 37).

Trial Court Opinion, 3-4 (internal footnotes omitted).

After the presentation of the Commonwealth's evidence, including the video of the PCA interview and a recording of a prison phone call between Appellant and G.P.'s aunt, Appellant testified. He "asserted that G.P. made up the allegations against him to avoid taking responsibility for money he claimed went missing." Trial Court Opinion, 6. At the conclusion of the trial, the court

found Appellant guilty of all charges. N.T. Trial, 10/11/23, 129. The court ordered a pre-sentence investigation report (PSI) and deferred sentencing.

New counsel, privately retained, entered an appearance for Appellant on October 30, 2023. *See* Entry of Appearance, 10/30/23. In January 2024, the Commonwealth requested a hearing to determine if Appellant was a sexually violent predator (SVP). *See* Praecipe, 1/10/24. On July 31, 2024, the court imposed an aggregate term of ten to twenty years' imprisonment, which was "a guideline sentence in the standard range." Trial Court Opinion, 10.[2] The court imposed concurrent imprisonment terms of: ten to twenty years' for rape of a child; eight to sixteen years for IDSI of a person less than sixteen years of age; two to four years for statutory sexual assault; five to ten years for sexual assault; and two to four years for indecent assault of a person less than thirteen years of age. *See* Order of Sentence, 7/31/24. The court also imposed concurrent terms of probation of: six years for corruption of a minor; two years for indecent exposure; one year for harassment; five years for recklessly endangering another person; and five years for endangering the welfare of a child. *See id.* The court found that Appellant met the

_____

[2] The Sentencing Guideline ranges were determined by Appellant's "prior record score of three and an offense gravity score of fourteen." Trial Court Opinion, 10 n.10. "Accordingly, the standard range [for the lead charge, rape of a child] was 120 months to the statutory limit[.]" *Id.*; *see also* 204 Pa. Code § 303.15 (7th ed., amend. 6) (setting the offense gravity score of fourteen for section 3121(c) offenses); 204 Pa. Code § 303.16 (7th ed., amend. 6) (applicable basic sentencing matrix). The statutory maximum for the rape of a child conviction was forty years' imprisonment, *see* 18 Pa.C.S. § 3121(e)(1), so any minimum imprisonment term between 120 and 240 months would have been a standard Guideline range term.

requirements for SVP, imposed an order of lifetime registration as a sexual offender, and ordered Appellant to comply with all Tier III registration requirements pursuant to the Sexual Offenders' Registration and Notification Act (SORNA). *See id*; *see also* 42 Pa.C.S. § 9799.14(d)(2) (designating rape as a Tier III offense); 42 Pa.C.S. § 9799.15(a)(3) (requiring Tier III offenders to register for life).

Through counsel, Appellant filed a timely post-sentence motion on August 7, 2024, alleging error in his prior record score and seeking reconsideration on multiple grounds: the sentence imposed was greater than necessary; the court did not give appropriate weight to the mitigating factors; the court did not give appropriate weight to the intangible and collateral consequences of the penalties imposed by SORNA and being deemed SVP; and the sentence was an unreasonable application of the court's discretion. *See* Appellant's Post-Sentence Motion, 8/7/24, ¶¶ 7-8. On August 12, 2024, counsel petitioned for leave to withdraw as counsel. *See* Motion to Withdraw as Counsel, 8/12/24. The motion was granted and the court appointed new counsel to represent Appellant. *See* Short Certificate, 9/5/24. The court granted an extension of thirty days for consideration of the post-sentence motions, which were denied by operation of law on January 6, 2025.[3] *See*

_____

[3] The last day of the extension would have fallen on Saturday, January 4, 2025, and so extended to Monday, January 6, 2025. *See* Pa.R.Crim.P. 101(c) (incorporating by reference rules of construction in Pennsylvania Rules of Judicial Administration including R.J.A. 107(a)-(b), relating to computation of
*(Footnote Continued Next Page)*

Pa.R.Crim.P. 720(B)(3); Order, 1/8/25; N.T. Motion for Reconsideration, 1/8/25, 2-3.

Appellant through counsel filed a timely notice of appeal. **See** Notice of Appeal, 1/9/25. The trial court ordered a statement of errors complained of on appeal, and Appellant complied, raising two issues. **See** Pa.R.A.P. 1925(b); Order, 1/22/25; Rule 1925(b) Statement, 1/31/25.

In this appeal, Appellant raises two issues for our review:

> 1. Whether the [trial] court erred and abused its discretion in allowing the forensic interview of the Complainant [to be admitted] as substantive evidence during the Commonwealth's case-in-chief since this violated Pa.R.E. 613(c)(1) because it was a prior consistent statement of [the] Complainant where there had not yet been an attempt to impeach her testimony by the defense?
>
> 2. Whether the sentence imposed on [Appellant] was harsh and excessive and an abuse of discretion since the [trial] court failed to properly consider all of the sentencing factors of 42 Pa.C.S.A. § 9721(b) or any mitigating evidence when it imposed the sentence in question?

Appellant's Brief, 11.

In his first issue, Appellant argues that the trial court erred by admitting the video of the PCA interview of G.P. **See** Appellant's Brief, 16-17. He contends that the trial court "confused" the Tender Years Act with the rule of evidence permitting a prior consistent statement to rehabilitate a witness' credibility. **Id.**, 17. He argues that the Tender Years Act "only allows a third party, and not the child, to testify as to the hearsay testimony of the child as

_____

time for rule of construction relating to exclusion of first day and inclusion of last date of time period and omission of last day of time period which falls on Saturday, Sunday or a legal holiday).

- 7 -

an exception to hearsay." *Id.* A prior consistent statement, Appellant argues, "in this context may only be admitted when [it] predate[s] the alleged fabrication, bias, improper influence or motive, or faulty memory." *Id.*, 16 (citing *Commonwealth v. Bond*, 190 A.3d 664, 669 (Pa. Super. 2018)) (internal quotation marks omitted).[4] Without stating it in the body of his argument, Appellant implies that it was therefore error for the court to admit the video of the PCA interview as substantive evidence as a prior consistent statement, which he contends may only be used "to rehabilitate the witness[.]" *Id.* (citing Pa.R.E. 613, comment). We conclude no relief is due.

It is well-established that "issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). This rule applies equally to appellants who raise "a new and different theory of relief for the first time on appeal." *Commonwealth v. McFalls*, 251 A.3d 1286, 1293 (Pa. Super. 2021) (internal quotation marks omitted).

While represented by appointed counsel, Appellant conceded the Commonwealth's motion, provided that G.P. would testify. When Appellant waived his right to counsel, however, he also refused to concede the Commonwealth's motion but agreed to stipulate to the authenticity of the PCA video. *See* N.T. Readiness Conference, 10/6/23, 12-16. On the first day of trial, after the formal colloquy for his waiver of a jury trial, Appellant personally

---

[4] *But see* Pa.R.E. 613(c)(2); *Commonwealth v. Lively*, 231 A.3d 1003, 1008-09 (Pa. Super. 2020) (prior consistent statement admissible to explain an inconsistent statement).

confirmed that he would concede the Commonwealth's Tender Years Act motion. *See* N.T. Trial, 10/10/23, 4. Accordingly, the PCA video, as well as the mother's and the aunt's testimony to G.P.'s out-of-court statements, were admitted as substantive evidence pursuant to the Tender Years Act. Appellant's argument, therefore, is premised on an erroneous understanding of the record.

Appellant's arguments on appeal–the PCA video was not admissible as a prior consistent statement under Rule 613(c)(1) and could not be admitted under the Tender Years Act–are waived from review because they were not raised in the trial court, Appellant conceded admission of the video pursuant to the Tender Years Act. *See* Pa.R.A.P. 302(a); *McFalls*, 251 A.3d at 1293. Moreover, he did not object to the PCA video on any other ground. The absence of a specific contemporaneous objection renders the appellant's claim waived. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 84 (Pa. 2008). Therefore, Appellant is entitled no relief on his first issue.

In his second claim, Appellant argues that the trial court abused its sentencing discretion "in failing to consider all sentencing factors and any mitigating evidence pursuant to 42 Pa.C.S.A. § 9271(b)." Appellant's Brief, 19. He argues further that the court sentenced him in the aggravated range recommended by the Sentencing Guidelines and, though he acknowledges that the court stated that it took into consideration his "rehabilitative needs," he points out that the court did not state what those needs were. *Id.*, 21 & n.2. Arguing that a sentencing court must consider the circumstances of an

offense and the character of a defendant, he asserts the court did not do so. *Id.*, 22. He contends that the trial court, "in essence, only considered the seriousness of the offenses without addressing any of these mitigating factors when it imposed an aggravated range sentence." *Id.*

Appellant's non-specific, generalized assertions challenge the exercise of the trial court's sentencing discretion. Discretionary sentencing claims are not appealable as of right. *See Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015).

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by[:] (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. An appellant must satisfy all four requirements.

*Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022) (internal citations omitted), *appeal denied*, 302 A.2d 626 (Pa. 2023).

Appellant satisfied the first two requirements for merits review of his discretionary sentencing claim by timely filing both a post-sentence motion and a notice of appeal. In his post-sentence motion he argued, *inter alia*, that the sentencing court did not give appropriate weight to mitigating factors and the aggregate sentence was unreasonable. *See* Appellant's Post-Sentence Motion, 8/7/24, ¶ 8.

However, Appellant failed to include a separate section in his brief setting forth the reasons for allowing an appeal of the discretionary aspects of his sentence.

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

Pa.R.A.P. 2119(f).

Despite the rule's mandate, Appellant failed to comply by including a separate statement setting forth a substantial question warranting review in his brief. "If a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim." *Commonwealth v. Lively*, 231 A.3d 1003, 1011 (Pa. Super. 2020) (quoting *Commonwealth v. Karns*, 50 A.3d 158, 166 (Pa. Super. 2012)). Because the Commonwealth has objected to Appellant's failure to include a Rule 2119(f) statement in his brief, we may not review the claim. *See* Commonwealth's Brief, 5. "It is only where a party can articulate reasons why a particular sentence raises doubts that this scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion." *Commonwealth v. Tuladziecki*, 522 A.2d 17, 20 (Pa. 1987). In the present case, Appellant "not only failed to articulate any such reasons, [he] did not even attempt to do so." *Id.*

Therefore, Appellant's sentencing claim is unreviewable. **_See Lively_**, 231 A.3d at 1011.[5]

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/27/2026

---

[5] We note that, contrary to Appellant's assertion, he was sentenced in the standard range of the Sentencing Guidelines. **_See_** Trial Court Opinion, 10. Moreover, the trial court had the benefit of a PSI. **_Id._** Where a sentencing court has the benefit of a PSI, "it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **_Commonwealth v. Conklin_**, 275 A.3d 1087, 1098 (Pa. Super. 2022) (citation omitted). "[W]here the court has been so informed, its discretion should not be disturbed." **_Commonwealth v. Ventura_**, 975 A.2d 1128, 1135 (Pa. Super. 2009).